Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FRANCISCO JAVIER MARTÍNEZ MORANDEIRA Y OTROS<br><br>Parte Apelada<br><br>v.<br><br>MARÍA JUANA ECHEVARRÍA FERNÁNDEZ Y OTROS<br><br>Parte Apelante | TA2025AP00182 | *Apelación procedente del Tribunal de Primera Instancia, Sala de Superior de Carolina*<br><br>Sobre:<br>División o Liquidación de la Comunidad de Bienes Hereditarios<br><br>Caso núm.:<br>SJ2020CV02013 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de septiembre de 2025.

El 29 de julio de 2025, la señora María Juana Echevarría Fernández y otros (la parte apelante) presentó ante nos una *Apelación de sentencia en caso civil* en la que solicitó que revoquemos la *Sentencia Sumaria Parcial Enmendada* emitida y notificada el 6 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[2] En el aludido dictamen, el TPI acogió los acuerdos alcanzados entre la parte apelante y Francisco Javier Martínez Morandeira y otros (parte apelada) para la partición del caudal hereditario de los bienes del señor Juan M. Echevarría Fernández (el señor Echevarría o el causante) y la señora Irene Gladys Orsini Buxeda (la señora Orsini Buxeda o la causante).

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Martínez Cordero.
[2] Entrada Núm. 134 del caso Núm. SJ2020CV020123 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de epígrafe tiene su inicio el 4 de marzo de 2020, cuando la parte apelada instó una *Demanda* en la que indicó que la causante falleció el 25 de julio de 2019. A raíz de su muerte, surgió la apertura de la Sucesión Orsini Buxeda según la Escritura Número trece (13) sobre Testamento abierto ante Notario.[3] Siendo así, informó ante el TPI que los miembros que componen la parte apelada son parte de la mencionada Sucesión. La parte apelada sostuvo que, la causante contrajo matrimonio con el señor Echevarría Fernández y, este falleció el 21 de marzo de 2018. Es menester señalar que, la Sucesión Echevarría Fernández está compuesta por la parte apelante.

Ante este cuadro, la parte apelada argumentó que ha realizado esfuerzos razonables y extrajudiciales para lograr un acuerdo con la parte apelada, en aras de efectuar la partición de la herencia de la causante. Ello, ante los bienes en común que tenían los causantes. Adujo que, la negativa de la parte apelada en cooperar con lograr la partición de la herencia de la causante ha ocasionado angustias mentales y daños. Por tanto, solicitó ante el TPI la suma de $1,000,000.00 en concepto de angustias mentales y la partición de la herencia de la señora Orsini Buxeda.

Tras diversos trámites procesales, el 20 de octubre de 2020, la parte apelante presentó una *Contestación a la demanda* en que solicitó que el TPI declarase No Ha Lugar la *Demanda* instada por la parte apelada.[4]

Luego, de varias incidencias relacionadas a la partición de la herencia, el 26 de septiembre de 2023, el TPI celebró una *Vista* en

---

[3] Entrada Núm. 1 del caso Núm. SJ2020CV020123 en el SUMAC.
[4] Entrada Núm. 21 del caso Núm. SJ2020CV020123 en el SUMAC.

la que la parte apelante le informó que el 11 de agosto de 2023 le cursó a la parte apelada una misiva en la que le propuso atender los asuntos pendientes a la adjudicación y partición de los bienes hereditarios de los causantes.[5] Consecuentemente, el foro primario le concedió hasta el 11 de octubre de 2025 para alcanzar un acuerdo.

El 20 de octubre de 2023, las partes instaron una *Moción de orden Re, Balance actual de cuantía depositada en el tribunal* en la que le solicitaron a la Unidad de Cuentas que les informara las cargas, derechos u otros descuentos aplicables en el dinero depositado en el TPI, de las cuentas de los causantes, para liquidar dicho dinero.[6]

El 29 de febrero de 2024, la parte apelada incoó una *Solicitud de Sentencia Sumaria* en la que suplicó que el foro primario dictase *Sentencia sumaria* en cuanto a los bienes y las deudas que componen el caudal hereditario de los causantes para lograr la partición de la herencia de la señora Orsini Buxeda y la partición de la herencia de la causante.[7] En lo pertinente, sostuvo que aún está en controversia la valorización de los daños y angustias sufridas por la parte apelada, si la parte apelada actuó con temeridad y, las deudas por las que responde el caudal hereditario de la causante. Además, en su mayoría, formuló varias determinaciones de hechos que, estaban relacionadas a los bienes que componen el caudal hereditario de los causantes y las deudas existentes. Encima, adujo que, alcanzó unos acuerdos con la parte apelante en aras de lograr la partición de la herencia de la causante. No obstante, alegó que la parte apelante no realizó los esfuerzos razonables necesarios para alcanzar la partición de la herencia en controversia.

---

[5] Entrada Núm. 81 del caso Núm. SJ2020CV020123 en el SUMAC.
[6] Entrada Núm. 83 del caso Núm. SJ2020CV020123 en el SUMAC.
[7] Entrada Núm. 91 del caso Núm. SJ2020CV020123 en el SUMAC.

El 9 de abril de 2024, la parte apelante radicó una *Oposición a "solicitud de sentencia sumaria"* en la que arguyó que, en general, no había controversia con respecto a los bienes que forman el caudal hereditario de los causantes.[8] A su vez, sustentó sus determinaciones de hechos con varios documentos informativos de los bienes y un acuerdo transaccional propuesto por la parte apelante y, aceptada por la parte apelada. Por otro lado, alegó que existe controversia con relación a las deudas del caudal hereditario de la causante y las inversiones bancarias realizadas por la causante y el señor Echevarría Fernández. También, ripostó que, no se configuraron los elementos de una causa de acción en daños para indemnizar a la parte apelada. Por ende, indicó que no procede la *Solicitud de Sentencia Sumaria.*

Así las cosas, el 11 de julio de 2024, el TPI emitió una *Sentencia Sumaria Parcial*[9] en la que formuló las siguientes determinaciones de hechos:

1. Los causantes Juan Martiniano Echevarría Fernández e Irene Gladys Orsini Buxeda, contrajeron matrimonio el 10 de julio de 1971, en Bayamón, Puerto Rico, bajo el régimen de sociedad de bienes gananciales.
2. El causante Juan Martiniano Echevarría Fernández, falleció, el día 21 de marzo de 2018.
3. El causante Juan Martiniano Echevarría Fernández, otorgó testamento, el día 5 de octubre de 2007 donde instituyó como herederos en cuanto a la legítima estricta a su hija María Juana Echevarría Fernández, en cuanto al tercio de mejora a sus nietos Kenneth, Jonathan y Wesley—todos de apellido Windham Echevarría y el tercio de libre disposición a su esposa la causante Irma Gladys Orsini Buxeda.
4. La causante Irene Gladys Orsini Buxeda, falleció, el 25 de julio de 2019, fecha posterior al fallecimiento de su esposo.
5. La causante Irene Gladys Orsini Buxeda, otorgó testamento, el día 5 de octubre donde instituyó como herederos a los aquí Demandantes en cuanto a dos terceras (2/3) partes de la herencia.
6. Los bienes que componen el caudal relicto son los que surgen de los Certificados de Cancelación de Gravamen Contributivo.
7. Los herederos de la Parte Demandante heredan en su totalidad el cincuenta por ciento (50%) del caudal ganancial de la causante Irene Gladys Orsini Buxeda. Además, heredan del cincuenta por ciento (50%) del caudal ganancial de Juan Martiniano Echevarría Fernández, el treinta y tres punto tres

---

[8] Entrada Núm. 102 del caso Núm. SJ2020CV020123 en el SUMAC.
[9] Entrada Núm. 110 del caso Núm. SJ2020CV020123 en el SUMAC.

por ciento (33.3%) o una tercera (1/3) del tercio adjudicado a Irene Gladys Orsini Buxeda.

8. Por acuerdo de ambas sucesiones se rentó el apartamento de Playa Serena en Isla Verde. El apartamento estuvo rentado desde el 15 de mayo de 2021 al 15 de marzo de 2023, el canon de arrendamiento fue de 3,000.00 dólares mensuales.

9. Por acuerdo de ambas sucesiones se abrió una cuenta en Banco Popular de Puerto Rico, número de cuenta 362341690, para el depósito de los cánones de arrendamiento y pago de los gastos de las sucesiones.

10. Las deudas y cargas de la herencia hasta el presente, las cuales aumentan mes a mes son las siguientes:
• Apartamento 601 en Carolina, desde el 2020 al presente, son por la cantidad $54,646.31
• Lote Florida #cuenta 2134127, desde el 2020 al presente, son por la cantidad $3,580.49
• Lote Florida #cuenta 2169125, desde el 2020 al presente, son por la cantidad $619.15
• Lote Florida #cuenta R8001-0195-20, desde el 2020 al presente, son por la cantidad $1,322.54
• Lote Florida #cuenta R8003-0423-01, desde el 2020 al presente, son por la cantidad $1,302.49 Lote Florida #cuenta R8004-01539-08 desde el 2020 al presente, son por la cantidad $1,279.98.

11. La Parte Demandante, realizó ofertas transaccionales a la parte Demandada, en las que la Parte Demandada recibiría una cantidad mayor a la que recibiría mediante testamento y fueron rechazadas por la Demandada.

12. El 14 de diciembre de 2023 las partes llegaron a un acuerdo total de partición y distribución, conforme a derecho y a la buena fe. La parte demandada mostró evidencia de ello como anejo K de la oposición a la sentencia sumaria. Entrada 104 del SUMAC.

13. Lo único que faltaba para la distribución final era culminar un trámite con el IRS, gestión que en nada afecta la valorización y adjudicación de los bienes de la herencia, ni tampoco el pago de créditos entre los herederos.

14. Mediante Orden de 12 de mayo de 2021 (SUMAC #47), este Tribunal dispuso lo siguiente: Este Tribunal ORDENA a que la partes entreguen a [HJ Sims] el Certificado de Transferencia para que se pueda realizar la liquidación y consignación del dinero de las cuentas conforme a derecho. [SUMAC #47, p. 5].

15. Posteriormente, HJ Sims liquidó las porciones de las cuentas de inversión que habían madurado "y que no estaban sujetas al pago de contribuciones federales" (escolio 1 omitió; SUMAC #60, p. 1 ¶ 1), y realizó el depósito judicial de las porciones líquidas solamente el 18 de octubre de 2022 (SUMAC #65, p. 1).[10]

En síntesis, el foro primario resolvió que la parte apelada demostró que los acuerdos alcanzados no se han ejecutado. Ello, dado que la parte apelante no había hecho los esfuerzos razonables para poner en vigor los mismos. Por otro lado, el *foro a quo* determinó que en la moción de sentencia sumaria no se demostró con suficiente especificidad los alegados daños sufridos por la parte

---

[10] Entrada Núm. 110 del caso Núm. SJ2020CV020123 en el SUMAC. págs. 2-4.

apelada. Así pues, el TPI ordenó la continuación de los procedimientos con relación a la adjudicación de los supuestos daños que le ocasionó la parte apelante a la parte apelada.

Luego, el 29 de julio de 2024, la parte apelada presentó una *Moción aclaratoria y en solicitud de enmienda nunc pro tunc* en la que solicitó que el TPI citara cual anejo era el que se refirió con relación al acuerdo suscrito entre las partes acerca de los bienes en el caudal hereditario de los causantes.[11] Ante ello, desconocía con que anejo fundamentó las determinaciones de hechos. Además, inquirió que el foro primario aclarase las deudas y cargas a las que se refiere en la determinación de hecho número diez (10) y, por último, la cuantía de los gastos para la liquidación y distribución de los bienes. Por otra parte, le indicó al TPI que debía enmendar varios nombres que fueron redactados incorrectamente.

El 11 de octubre de 2024, el TPI emitió una *Orden sobre procedimientos* en la que resolvió que la parte apelante no se expresó en cuanto a las enmiendas solicitadas por la parte apelada a llevarse a cabo en la *Sentencia Sumaria Parcial* y, por tanto, enmendaría la citada sentencia.[12]

Después de varios trámites procesales, el 6 de junio de 2025, el foro primario emitió una *Sentencia Sumaria Parcial Enmendada* en la que mantuvo las determinaciones de hechos previamente formuladas.[13] No obstante, cumplió en aclarar los bienes y deudas que componen el caudal en controversia, conforme al acuerdo alcanzado. También, corrigió los errores de forma solicitados por la parte apelada. Sin embargo, recalcó que existía controversia con respecto a la reclamación de daños presentada por la parte apelada.

Insatisfecha, el 23 de junio de 2025, la parte apelante instó una *Moción de reconsideración* en la que argumentó que no procede

---

[11] Entrada Núm. 112 del caso Núm. SJ2020CV020123 en el SUMAC.
[12] Entrada Núm. 119 del caso Núm. SJ2020CV020123 en el SUMAC.
[13] Entrada Núm. 134 del caso Núm. SJ2020CV020123 en el SUMAC.

la adjudicación de bienes toda vez que existían varias deudas pendientes.[14] Además, arguyó que aún habían bienes del caudal hereditario sujetos a ser adjudicados.[15] Además, alegó que, con relación a la adjudicación de los bienes, el TPI fundamentó las determinaciones de hechos con el anejo incorrecto. Asimismo, arguyó que, no procede la titularidad de los bienes debido a que existían varias deudas pendientes.

El 24 de junio de 2025, el TPI le concedió un término a la parte apelada para presentar su oposición.[16]

El 25 de junio de 2025, la parte apelada incoó una *Moción en cumplimiento de orden del 24 de junio de 2025* en la que razonó que el foro primario se limitó en corregir nombres y aclarar en cual fundamentó la adjudicación de los bienes en el caudal hereditario de la causante.[17]

Ante este cuadro, ese mismo día, el TPI declaró No Ha Lugar la *Moción de reconsideración*.[18]

Inconforme, el 29 de julio de 2025, la parte apelante instó un recurso de *Apelación* ante nos y apuntó los siguientes señalamientos de error:

> Primer error: Erró el Tribunal de Primera Instancia al modificar, sin jurisdicción, la Sentencia Sumaria parcial notificada el 11 de julio de 2024.

> Segundo error: Erró el Tribunal de Primera Instancia al modificar una Sentencia Sumaria Parcial mediante determinaciones que son claros errores de derecho.

En atención a nuestra *Resolución*, el 28 de agosto de 2025, la parte apelada instó un *Alegato en oposición Apelación a Sentencia caso civil*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver.

---

[14] Entrada Núm. 139 del caso Núm. SJ2020CV020123 en el SUMAC.
[15] Entrada Núm. 139 del caso Núm. SJ2020CV020123 en el SUMAC.
[16] Entrada Núm. 141 del caso Núm. SJ2020CV020123 en el SUMAC.
[17] Entrada Núm. 142 del caso Núm. SJ2020CV020123 en el SUMAC.
[18] Entrada Núm. 143 del caso Núm. SJ2020CV020123 en el SUMAC.

**II.**

**A.**

La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante entre las partes. *MCS Advantage, Inc. V. Fossas Blanco*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385–386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). Los tribunales estamos impedidos de atender controversias en las que carezcamos de jurisdicción sobre la materia. *MCS Advantage, Inc. V. Fossas Blanco, supra*, pág. 144-145. La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014). Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la tienen. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Morán v. Martí*, 165 D.P.R. 356 (2005). Los asuntos relacionados a la jurisdicción son privilegiadas y deben resolverse con preferencia a cualquiera otras. *SLG Szendrey Ramos v. F. Castillo*, supra pág. 882. Los tribunales deben examinar su propia jurisdicción, así como del foro de donde procede el recurso ante su consideración. *SLG Szendrey Ramos v. F. Castillo*, supra pág. 883.

**B.**

Las enmiendas relativas a los errores de forma o enmienda *nunc pro tunc* están cimentadas en la Regla 43.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.1. La citada regla dispone que la parte promovente debe presentar la moción de enmiendas a no más tardar de quince (15) días después de haberse archivado en auto copia de la notificación de la sentencia. El propósito de la Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1, es permitir al Tribunal que dictó

sentencia corregir un error de forma cometido por "inadvertencia u omisión, o errores mecanográficos, o que *no puedan considerarse que van a la sustancia de la sentencia,* orden o resolución, ni que se relacionan con asuntos discrecionales". *SLG Coriano Correa v. Kmart Corp.*, 154 DPR 523, 530 (2001). Por su naturaleza, las enmiendas *nunc pro tunc* tienen el efecto de retrotraerse a la fecha de la sentencia o resolución original. *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 91 (2018); Vélez v. AAA, 164 DPR 772, 791 (2005); *SLG Coriano Correa v. Kmart Corp., supra,* pág. 530. Dichas enmiendas no pueden menoscabar los derechos ya adquiridos por cada litigante cuando ha transcurrido en exceso del término dispuesto para apelar o solicitar la revisión. *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 91 (2018). Una enmienda *nunc pro tunc* no puede corregir aspectos de derecho toda vez que puede afectar los derechos de las partes. *Íd.* El criterio rector es que la cuestión a ser enmendada sea la corrección de una inadvertencia y no alterar un derecho. *Otero Vélez v. Schroder Muñoz,* supra, pág. 91; *SLG Coriano Correa v. Kmart Corp., supra,* pág. 530.

### C.

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services,* 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no exista controversia reales y sustanciales en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430

(2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra*, pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra*, pág. 213.; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, a Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte

promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En esa línea, la Regla 36.5, *supra*, R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho

material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en

cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

### III.

En su primer señalamiento de error, la parte apelante argumentó que el TPI carecía de jurisdicción para atender una *enmienda nunc pro tunc* puesto que fue presentada fuera del término de quince (15) días establecido en las Reglas de Procedimiento Civil, *supra*.

Como es conocido, los tribunales debemos ser celosos guardianes de nuestra jurisdicción. Con ello, debemos abstenernos de intervenir en asuntos que incidan con nuestra jurisdicción. Por ende, no debemos asumir jurisdicción cuando carecemos de tenerla.

Con relación al error planteado por la parte apelante, una *enmienda nunc pro tunc* se utiliza para enmendar un error de forma, a solicitud de una parte interesada. Dicha moción, no tiene el efecto de adjudicar un asunto de derecho toda vez que estrictamente se destaca por atender errores de forma en un dictamen. Ahora bien, una parte puede instar una *enmienda nunc pro tunc* a partir de los quince (15) días desde archivado en auto copia de la notificación de la sentencia.[19]

Tras un examen sigiloso del expediente, resolvemos que el TPI no incidió en el error señalado por la parte apelante. Ello, puesto que el 11 de julio de 2025, el TPI emitió una *Sentencia Sumaria Parcial*. Luego, el 29 de julio de 2024, la parte apelada presentó una *Moción aclaratoria y en solicitud de enmienda nunc pro tunc.*

---

[19] *Véase* Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1.

Ciertamente, la parte apelada presentó dentro del término estatutario la citada moción puesto que el último día para presentar la moción era un feriado, siendo este el 25 de julio de 2024 y, el 26 de julio de 2024, conforme a una Orden Administrativa del Poder Judicial, nuestros tribunales estuvieron cerrados. Encima, los días 27 y 28 de julio de 2025 eran días de fin de semana. Así pues, el último día hábil para la presentación de la *enmienda nunc pro tunc*, se trasladó al día 29 de julio de 2025. Por tanto, la parte apelada radicó la mencionada moción dentro del término establecido en las Reglas de Procedimiento Civil, *supra*, y, por tanto, el foro primario tenía jurisdicción para atender la misma.

En su segundo señalamiento de error, la parte apelante alegó que, el foro primario estaba impedido de modificar la *Sentencia Sumaria Parcial* tras adjudicar los bienes del caudal hereditario perteneciente a los bienes comunes de los causantes mediante la *Moción aclaratoria y en solicitud de enmienda nunc pro tunc*. Veamos.

Conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

Luego de evaluar la *Solicitud de Sentencia Sumaria*, concluimos que esta cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3. En dicha solicitud, la parte apelada enumeró varias determinaciones de hechos que a su juicio no había controversia sobre ellos. En aras de respaldar los hechos incontrovertidos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, en la *Oposición a "Solicitud de Sentencia Sumaria"* la parte apelante cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues la parte apelante enumeró los hechos en los que razonaba existía controversia de hechos y los hechos incontrovertidos.

Ahora nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Tras un examen cuidadoso del expediente y las mociones de sentencia sumaria y oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que no existen hechos materiales en controversia. Consecuentemente, coincidimos con las determinaciones acogidas por el foro primario y, por tanto, adoptamos las determinaciones de hechos. Por último, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho aplicable al caso de autos.

La moción de sentencia sumaria promueve la rápida solución y adjudicación de las controversias. La parte promovente debe enumerar en la moción los hechos en los que no exista controversias de hechos. Como hemos esbozado, dichas determinaciones deben estar acompañadas de documentos que sostengan los hechos que no existe controversia. Además, el TPI y este Tribunal de Apelaciones no puede disponer sumariamente de un caso ante la mínima duda u controversia que impida la disposición sumaria del caso.

En lo que respecta al caso de epígrafe, resolvemos que el foro primario emitió una *Sentencia Sumaria Parcial enmendada* en la que no adjudicó los bienes del caudal hereditario en controversia. Ello, toda vez que el TPI aclaró los bienes que componen el caudal hereditario a tenor con el acuerdo suscrito y aceptado entre las partes. Además, el *foro a quo* se limitó en mencionar los bienes que componen el caudal hereditario y las deudas pendientes para continuar con la partición de la herencia. Destacamos que, la parte

apelante tuvo oportunidad para oponerse a las enmiendas propuestas por la parte apelada. No obstante, no lo hizo. En fin, esta Curia decreta que el TPI no alteró las determinaciones de hechos y conclusiones de derecho previamente emitidas en la *Sentencia Sumaria Parcial*.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia Sumaria Parcial Enmendada* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones